UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CIT BANK N.A.,

                        Plaintiff,

        -against-                          MEMORANDUM & ORDER
                                           15-CV-4395(JS)(ARL)
ELLEN M. ELLIOTT, KEYHOLE CAPITAL-
FUND V, and PORTFOLIO RECOVERY
ASSOCIATES LLC,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Allison J. Schoenthal, Esq.
                    Nicole E. Schiavo, Esq.
                    Hogan Lovells US LLP
                    875 Third Avenue
                    New York, NY 10022

                    Rachel B. Stein, Esq.
                    Sean Kevin Monahan, Esq.
                    Robert G. Wilk, Esq.
                    Windels Marx Lane & Mittendorf, LLP
                    156 West 56th Street
                    New York, NY 10019

For Defendants:
Ellen M. Elliott    Enza M. Brandi, Esq.
                    33 Walt Whitman Road, Suite 203
                    Huntington, NY 11746

Keyhole Capital -
Fund V              Adam J. Friedman, Esq.
                    Pulvers, Pulvers, Thompson & Friedman, LLP
                    950 Third Ave., 11th Fl.
                    New York, NY 10022

Portfolio Recovery
Associates LLC      No appearance

SEYBERT, District Judge:

Pending before the Court in this foreclosure action is Plaintiff CIT Bank N.A.'s ("Plaintiff") motion for summary judgment against Defendant Ellen M. Elliott ("Elliott"). (Pl.'s Mot., Docket Entry 53.) For the following reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

I. Factual History

Plaintiff, formerly known as OneWest Bank N.A., is a national banking association with a principal place of business in Pasadena, California. (Pl.'s 56.1 Stmt. ¶¶ 1-2.) Elliott is the owner of the mortgaged property at issue, 167 Soundview Drive, Montauk, New York 11954 (the "Property"). (Pl.'s 56.1 Stmt. ¶¶ 3, 5.)

A. Mortgages and Notes

On November 10, 2004, Elliott borrowed $1,105,000 in principal from Lehman Brothers Bank, F.S.B., executing a note (the "2004 Note") secured by a mortgage on the Property (the "2004 Mortgage," and together with the 2004 Note, the "2004 Loan"). (Pl.'s 56.1 Stmt. ¶ 4; 2004 Note, Brandi Decl. Ex. A, Docket Entry

---

[1] The following facts are taken from Plaintiff's Local Civil Rule 56.1 Statement, (Pl.'s 56.1 Stmt., Docket Entry 53-2), and Elliott's Counterstatement, (Elliott's 56.1 Counterstmt., Docket Entry 41). Any relevant factual disputes are noted. Internal quotation marks and citations have been omitted.

55-2, ECF pp. 2-6; 2004 Mortg., Marks Aff. Ex. B, Docket Entry 53-11, ECF pp. 3-27.)  Mortgage Electronic Registration Systems, Inc. ("MERS") served as Lehman Brothers Bank, F.S.B.'s nominee and the mortgagee of record.  (2004 Mortg. at ECF p. 3.)  The 2004 Note is indorsed from Lehman Brothers Bank, F.S.B., to Lehman Brothers Holdings Inc., and further indorsed, in blank, by Lehman Brothers Holdings Inc.  (2004 Note at ECF p. 6.)

On October 18, 2006, Elliott borrowed an additional $395,000 from MortgageIt, Inc. ("MortgageIt").  (Pl.'s 56.1 Stmt. ¶ 5.)  Elliott executed a note (the "2006 Note") secured by a mortgage (the "2006 Mortgage," and together with the 2006 Note, the "2006 Loan"), and the note is indorsed in blank by MortgageIt. (Pl.'s 56.1 Stmt. ¶ 5; 2006 Note, Wilk Cert. of Merit Ex. A Pt. 2, Docket Entry 3-2, ECF pp. 20-25, at ECF p. 24; 2006 Mortg., Wilk Cert. of Merit Ex. A Pts. 3-4, Docket Entry 3-3, ECF pp. 4-25 and Docket Entry 3-4, ECF pp. 1-4.)  MERS acted as MortgageIt's nominee and the mortgagee of record.  (2006 Mortg. at Docket Entry 3-3, ECF p. 4.)

Plaintiff alleges that on October 18, 2006, Elliott consolidated the 2004 Loan and the 2006 Loan into a single loan from MortgageIt in the original principal amount of $1,500,000 (the "Consolidated Loan"), secured by the 2004 and 2006 Mortgages on the Property and memorialized in a consolidated note (the "Consolidated Note").  (Pl.'s 56.1 Stmt. ¶¶ 5-6; Consol. Note,

Marks Aff. Ex. A, Docket Entry 53-10.)  Elliott also executed a mortgage dated October 18, 2006, securing the Consolidated Note with the Property (the "Consolidated Mortgage").[2]  (Pl.'s 56.1 Stmt. ¶ 6; Consol. Mortg., Marks Aff. Ex. C, Docket Entry 53-12, ECF pp. 1-26.)  MERS is named as MortgageIt's nominee and the mortgagee of record.  (Consol. Mortg. at ECF p. 1.)  Additionally, Elliott entered into a Consolidation, Extension and Modification Agreement ("CEMA") with MortgageIt dated October 18, 2006, though the original, signed CEMA was not recorded, (Pl.'s 56.1 Stmt. ¶ 7), and cannot be located,[3] (Pl.'s Br., Docket Entry 53-1, at 3). Elliott admits in her Answer that she executed the Consolidated Note, (Elliott Ans., Docket Entry 29, ¶ 7), though she "disputes the validity of the consolidation of the mortgages" and "disputes the legality, propriety and validity of [the CEMA] in that [she] alleges that instrument to be defective."  (Elliott's 56.1 Counterstmt. ¶¶ 5, 7).

The Consolidated Note bears an indorsement from MortgageIt to IndyMac Bank F.S.B. ("IndyMac")--evidencing MortgageIt's transfer of the Consolidated Note to IndyMac, (Marks Aff., Docket Entry 53-9, ¶ 7)--as well as an indorsement in blank

---

[2] The Consolidated Mortgage was not recorded.  (Pl.'s 56.1 Stmt. ¶ 6.)

[3] Though Plaintiff cannot locate the original CEMA, it produced a CEMA "similar to" the one Elliott executed.  (Pl.'s Br. at 3; CEMA, Marks Aff. Ex. C, Docket Entry 53-12, ECF pp. 27-32.)

by IndyMac.[4]  (See Pl.'s 56.1 Stmt. ¶ 8; Consol. Note at ECF p. 5.)

On July 11, 2008, the now-dissolved Office of Thrift Supervision

("OTS") closed IndyMac and appointed the Federal Deposit Insurance

Corporation ("FDIC") as its receiver.  (Pl.'s 56.1 Stmt. ¶ 11.)[5]

That same day, the OTS created IndyMac Federal Bank, F.S.B.

("IndyMac Federal"), into which IndyMac's assets were transferred,

and appointed the FDIC as IndyMac Federal's conservator.  (Pl.'s

56.1 Stmt. ¶ 11.)  On March 19, 2009, the OTS also appointed the

---

[4] Elliott "disputes and objects to the accuracy of th[is]
statement" because the relevant paragraph in Plaintiff's
statement of material facts "does not identify the Note referred
to in said paragraph."  (Elliott's 56.1 Counterstmt. ¶ 8.)  Like
many of her objections, disputes, and arguments in this matter,
Elliott's contention is frivolous.  Plaintiff established "the
Note" as a defined term in paragraph 5 of its Statement, and
clearly refers to the same "Note" in paragraph 8.

[5] Elliott "disputes . . . the accuracy of the statements made" in
paragraph 11 of Plaintiff's Statement, arguing that the cited
Affidavit of Rebecca Marks (the "Marks Affidavit") is
"inadmissible hearsay, in that the statements are not alleged to
have been made by an individual with personal knowledge or
otherwise proven by admissible evidence."  (Elliott's 56.1
Counterstmt. at 1, ¶ 11.)  Elliott's hearsay objections are
addressed infra at Discussion Section I.  Regardless, the Court
takes judicial notice of these facts, as they also appear in a
page on the FDIC's website.  FDIC, Failed Bank Information,
Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank,
F.S.B., Pasadena, CA, https://www.fdic.gov/bank/individual/
failed/indymac.html; see FED. R. EVID. 201(b)(2) ("The court may
judicially notice a fact that is not subject to reasonable
dispute because it . . . can be accurately and readily
determined from sources whose accuracy cannot reasonably be
questioned."); Arace v. Quicken Loans, Inc., No. 15-CV-0382,
2016 WL 390088, at *3 n.1 (S.D.N.Y. Feb. 1, 2016) (citations
omitted) ("The Court may take judicial notice of . . . a
'document[ ] retrieved from [an] official government website.'"
(brackets in original) (ellipsis added)).)

FDIC as receiver for IndyMac Federal. (Pl.'s 56.1 Stmt. ¶ 11.) Since the dates of its appointments, the FDIC has served as receiver for IndyMac and as receiver and conservator for IndyMac Federal. (Pl.'s 56.1 Stmt. ¶ 11.)

The original Consolidated Note was physically delivered to IndyMac Federal,[6] (Pl.'s 56.1 Stmt. ¶ 10), and on March 18, 2009, Plaintiff purchased substantially all of the assets of IndyMac Federal pursuant to a Master Purchase Agreement ("MPA"), (Pl.'s 56.1 Stmt. ¶ 12; MPA, Marks Aff. Ex. D, Docket Entry 53-13). As part of that transaction, on March 19, 2009, the FDIC as receiver of IndyMac Federal entered into a Loan Sale Agreement ("LSA") with Plaintiff by which Plaintiff acquired certain mortgage loans, including Elliott's Consolidated Loan. (Pl.'s 56.1 Stmt. ¶ 13; LSA, Marks Aff. Ex. E, Docket Entry 53-14.) Since 2009, Plaintiff has serviced the Consolidated Loan under a loan number ending in 5085.[7] (Pl.'s 56.1 Stmt. ¶ 9.)

---

[6] Plaintiff objects to and disputes this fact on the basis that "the statements [in the cited Marks Affidavit] are inadmissible hearsay." (Elliott's 56.1 Counterstmt. ¶ 10.) Her hearsay arguments are addressed infra at Discussion Section I.

[7] Elliott responds that she "lacks personal knowledge as to the truth of th[is] statement." (Elliott's 56.1 Counterstmt. ¶ 9.) Under Local Civil Rule 56.1, each paragraph in the movant's statement of facts "will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph" in the opponent's counterstatement, "followed by citation to evidence which would be admissible." LOCAL CIV. R. 56.1(c) & (d). Accordingly, where Elliott "lacks personal

The original Consolidated Note, with two allonges,[8] was delivered to Plaintiff's counsel in May 2014, and Plaintiff's counsel was in physical possession of the Consolidated Note, with allonges firmly affixed, on the date Plaintiff commenced this action.[9]  (Pl.'s 56.1 Stmt. ¶ 14.)  One of the allonges appended to the Consolidated Note is indorsed from the FDIC as receiver for IndyMac Federal to OneWest Bank, F.S.B., and the other is indorsed in blank by OneWest Bank, F.S.B.  (Allonges, Marks Aff. Ex. A, Docket Entry 53-10, ECF pp. 7-8.)

B.   Default

Based on Marks' testimony, Plaintiff alleges that Elliott defaulted on the Consolidated Loan by failing make the payment due August 1, 2009, and all payments due thereafter.  (Pl.'s 56.1 Stmt. ¶ 15; Marks Aff. ¶ 14.)  Elliott does not dispute that she failed to make the payment due August 1, 2009--and thus,

_____

knowledge of the truth" of facts alleged in Plaintiff's Statement, the Court deems them admitted.

[8] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary (10th ed. 2014).

[9] Elliott "disputes and objects to the accuracy" of these statements, which are based on the Affirmation of Andrew L. Jacobson (the "Jacobson Affirmation"), (Jacobson Affirm., Docket Entry 53-20), alleging that they are "inadmissible hearsay . . . not alleged to have been made by an individual with personal knowledge or otherwise proven by admissible evidence."  (Elliott's 56.1 Counterstmt. at 1, ¶ 14.)  This argument is addressed infra at Discussion Section I.

defaulted--on the Consolidated Loan, though she "objects and disputes . . . as to the propriety of the relief sought by this Plaintiff, vis-à-vis the mortgage chain and ownership of the Note and the defects contained therein." (Pl.'s 56.1 Stmt. ¶ 15; Elliott's 56.1 Counterstmt. ¶ 15.)

Plaintiff contends that Elliott does not reside at the Property, but Elliott cites her 2015 affidavit[10] in support of her claim that as of the date of her Counterstatement, February 8, 2017, she "resides at the subject Property." (Pl.'s 56.1 Stmt. ¶ 16; Elliott's 56.1 Counterstmt. ¶ 16.)

On February 10, 2015, pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") § 1304, Plaintiff's servicing division sent 90-day notices dated February 9, 2015 by certified mail and first-class mail addressed to Elliott at the Property. (Pl.'s 56.1 Stmt. ¶ 17; Marks Aff. ¶¶ 15, 18; 90-Day Notices, Marks Aff. Ex. G, Docket Entry 53-16.) Plaintiff filed the 90-day notice with the New York State Department of Financial

---

[10] The Court located two Elliott affidavits on the docket. The first is undated but was notarized on September 4, 2015, and asserts that Elliott did not reside at the Property when this action was commenced (the "Elliott Affidavit"). (See generally Elliott Aff., Docket Entry 15-6.) The second affidavit, also undated but notarized on October 21, 2015, provides that she was not properly served in this action at another property in Montauk, New York. (See generally Oct. 2015 Elliott Aff., Docket Entry 23.) As the first affidavit is more relevant, the Court assumes that it is the "Elliott Affidavit" upon which she relies in her Counterstatement.

Services on February 10, 2015. (Pl.'s 56.1 Stmt. ¶ 18.) On February 11, 2015, pursuant to Sections 15 and 22 of the mortgages, Plaintiff's servicing division mailed a notice of default dated February 9, 2015 to Elliott at the Property. (Pl.'s 56.1 Stmt. ¶ 19; Marks Aff. ¶¶ 17-18; Notice of Default, Marks Aff. Ex. I, Docket Entry 53-18.) Elliott purports to dispute that she received the 90-day notices and the notice of default on hearsay grounds (addressed <u>infra</u> at Discussion Section I), and, citing the Elliott Affidavit, because she alleges that she did not receive a 90-day notice or default notice. (Elliott's 56.1 Counterstmt. ¶¶ 17, 19-20.)

Citing the Marks Affidavit, Plaintiff alleges that despite notices of default and opportunities to cure, Elliott failed to cure her default and, to date, the Consolidated Loan remains in default. (Pl.'s 56.1 Stmt. ¶¶ 20-21; Marks Aff. ¶¶ 19, 21.) Elliott "disputes and objects to the accuracy" of the allegation that she failed to cure her default on three grounds: (1) she contends that "the statements are inadmissible hearsay," discussed <u>infra</u> at Discussion Section I; (2) based on the Elliott Affidavit, she "alleges that she did not receive notices of default"; and (3) she "objects and disputes the statement generally as to the propriety of the relief sought by this Plaintiff, vis-à-vis the mortgage chain and ownership of the Note and the defects contained therein." (Elliott's 56.1 Counterstmt. ¶ 20.) Finally,

Elliott disputes that the Consolidated Loan remains in default "to the extent that [she] disputes the legality, propriety and validity of that instrument the mortgage instruments [sic], including but not limited to the [CEMA], multiple endorsements, and allonges to the various Notes and Assignments produced by the Plaintiff, and alleges that the mortgage instruments and the mortgage chain are defective." (Elliott's 56.1 Counterstmt. ¶ 21.)

II. Procedural History

Plaintiff commenced this action on July 28, 2015 against defendants Elliott, Keyhole Capital-Fund V ("Keyhole"), Portfolio Recovery Associates LLC ("Portfolio"),[11] and John Does 1 through 10. (See generally Compl.) On July 15, 2016, pursuant to the parties' stipulation, the Court dismissed the John Doe defendants and amended the caption to reflect Plaintiff OneWest Bank N.A.'s name change to CIT Bank, N.A. (July 15, 2016 Elec. Order.) Keyhole has appeared but not answered or otherwise responded to the Complaint, and Portfolio has not answered or appeared in this action. On July 21, 2017, the Clerk of the Court entered a certificate of default against Keyhole and Portfolio. (Cert. of Default, Docket Entry 54.)

---

[11] Plaintiff alleges that Keyhole and Portfolio have an interest in the Property by virtue of being holders of a subordinate mortgage and a subordinate judgment, respectively. (Compl., Docket Entry 1, ¶¶ 5-6.)

On September 4, 2015, Elliott filed a motion to dismiss for lack of personal jurisdiction, arguing that she was not properly served with the Summons and Complaint. (Mot. to Dismiss, Docket Entry 15.) The Court referred the motion to Judge Arlene R. Lindsay for a report and recommendation ("R&R"), (Referral Order, Docket Entry 27), which she issued on May 23, 2016, (R&R, Docket Entry 28), and which the Court adopted on July 8, 2016, denying Elliott's motion to dismiss. (July 2016 Mem. & Order, Docket Entry 30.)

On June 14, 2016, Elliott answered the Complaint, asserting fourteen affirmative defenses as well as counterclaims for a declaratory judgment of quiet title and for quiet title pursuant to RPAPL Article 15. (Answer, Docket Entry 29, ¶¶ 11-89.) Plaintiff answered Elliott's counterclaims on July 8, 2016. (Pl.'s Answer, Docket Entry 35.)

Plaintiff moved for summary judgment on July 5, 2017, (Pl.'s Br.), and Elliott opposed the motion on August 3, 2017, (Elliott's Opp., Docket Entry 55). Plaintiff filed a reply brief in further support of its motion on August 18, 2017. (Pl.'s Reply, Docket Entry 57.)

<u>DISCUSSION</u>

I.   <u>Elliott's Evidentiary Objections</u>

As an initial matter, as referenced in the Factual History, Elliott "objects generally to statements cited to" the

11

Marks Affidavit and the Jacobson Affirmation "as inadmissible hearsay lacking grounds in personal knowledge." (Elliott's 56.1 Counterstmt. at 1.) She "further objects to any documents purporting to be qualified as business records to the extent that the documents are not properly qualified as business records." (Elliott's 56.1 Counterstmt. at 1.) Notably, while Elliott alleges in her Opposition that "[n]either the Marks Affidavit nor the Jacobson Affirmation lay sufficient basis for the introduction of business records, and are inadmissible hearsay," (Elliott's Opp. at 11), her Opposition contains no legal argument on her hearsay objections, (see Elliott's Opp. at 11-14).

The testimony contained in and the documents accompanying the Marks Affidavit and the Jacobson Affirmation are admissible.

First, the mortgage-servicing documents attached to the Marks Affidavit fit within Federal Rule of Evidence 803(6)'s "records of a regularly conducted activity" exception to the rule against hearsay. See FED. R. EVID. 803(6). Marks is a "qualified witness," as she testified that "[i]n the regular performance of [her] job functions, [she] ha[s] access to and regularly review[s] business records maintained by [Plaintiff] for the purpose of servicing mortgage loans and, therefore, [is] personally familiar with the practices and procedures for maintaining these business records." (Marks Aff. ¶ 3); see FED. R. EVID. 803(6)(D). Further,

12

she testified that the records were "made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records," the records were "kept in the course of business activity conducted regularly by [Plaintiff]," and it was "the regular practice of Plaintiff's mortgage servicing business to make and maintain these records, including the relevant records of prior servicers." (Marks Aff. ¶ 3); see FED. R. EVID. 803(6)(A)-(C).  Finally, Elliott has not shown that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." See FED. R. EVID. 803(6)(E).  The same analysis applies to the Consolidated Note referenced in and attached to the Jacobson Affirmation.[12]  (See Jacobson Affirm. ¶ 2.)

---

[12] Jacobson affirms under penalty of perjury that:

> In the regular and ordinary course of business, it is Windels's [his law firm's] practice to contemporaneously make and then to maintain and utilize business records and documents related to legal actions it commences, including the instant action (collectively, the "Business Records"). . . . I am familiar with Windels's record-keeping practices, I have continuing access to the Business Records with respect to this action, and I am familiar with how each document attached to this Affirmation was retrieved and compiled.  The statements herein are based on my review of Windels's Business Records, and my knowledge of Windels's procedures for maintaining its Business Records.  Moreover, I have personally reviewed the document attached to this Affirmation [the Consolidated Note], which was taken from such business records.

Second, to the extent Elliott alleges that the statements in the Marks Affidavit and Jacobson Affirmation lack "grounds in personal knowledge," (Elliott's 56.1 Counterstmt. at 1), "[a]n affiant's conclusions based on personal observations over time . . . may constitute personal knowledge, and an affiant may testify as to the contents of records she reviewed in her official capacity." Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) (citing State v. Saint Francis Hosp., No. 98-CV-0939, 2000 WL 374662, at *2 (S.D.N.Y. Apr. 10, 2000)) (footnote omitted). The affidavit testimony of Marks, an Assistant Vice President in Plaintiff's Litigation Department, (Marks Aff. ¶ 1), is admissible because it is based on personal knowledge that she gained by examining business records, including those attached to her Affidavit, (Marks Aff. ¶ 3 ("In connection with making this affidavit, I have personally examined these business records as they relate to the loan at issue in this action, including the exhibits herein.")); see FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."); Searles, 98 F. Supp. 2d at 461-62 (citing Saint Francis Hosp., 2000 WL 374662, at *2)

---

(Jacobson Affirm. ¶ 2.)

(admitting affidavit of organization's corporate officer where affiant had direct personal knowledge of the facts based on her review of administrative materials and files).  The Affirmation of Jacobson--an attorney affiliated with a law firm representing Plaintiff, (Jacobson Affirm. ¶ 1)--is admissible for the same reason, (see Jacobson Affirm. ¶ 2); see also, e.g., U.S. Bank Na't Ass'n v. Ehrenfeld, 144 A.D.3d 893, 894, 41 N.Y.S.3d 269, 271 (App. Div. 2d Dep't 2016) (affirming grant of summary judgment in foreclosure action where plaintiff submitted loan documents and affidavit based on affiant's "knowledge of Wells Fargo's record-keeping practices and records regarding the loan").

## II.  Legal Standard

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986).  In determining whether an award of summary judgment is appropriate, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id. However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

"To establish a prima facie case of foreclosure in New York, a plaintiff must show (1) a mortgage; (2) an unpaid note; and (3) proof of default." 1077 Madison St., LLC v. Smith, 670 F. App'x 745, 746 (2d Cir. 2016) (citing Fleet Nat'l Bank v. Olasov, 16 A.D.3d 374, 374, 793 N.Y.S.2d 52 (2005)). After the plaintiff has established a prima facie case, the defendant may raise defenses. Id. (citing First Nat'l Bank of Highland v. J. & J. Milano, Inc., 160 A.D.2d 670, 671, 553 N.Y.S.2d 448 (1990)). If the defendant raises the defense of standing, "'the plaintiff is

16

required to prove its standing before it may be determined whether the plaintiff is entitled to relief.'" Id. (quoting U.S. Bank, N.A. v. Sharif, 89 A.D.3d 723, 724, 933 N.Y.S.2d 293 (2011)).

III. Application

    A.  Plaintiff's Prima Facie Case

       Plaintiff argues that it has established its prima facie case by presenting to the Court (1) the Consolidated Note, (2) the mortgages on the Property, and (3) proof of Elliott's default, including a notice of default, 90-day notices, the Jacobson Affirmation, and the Marks Affidavit. (Pl.'s Br. at 9.) In her opposition, by ignoring the relevant elements, (see generally Elliott's Opp.), Elliott seemingly concedes that Plaintiff has demonstrated a prima facie case.

       The Court concludes that Plaintiff has established its prima facie case of foreclosure. It has presented the Court with (1) the Consolidated Note that Elliott executed, (Consol. Note; Answer ¶ 7); (2) mortgages on the Property[13]; and (3) uncontested

---

[13] Plaintiff points to three mortgages in this action: the 2004 Mortgage securing the 2004 Note in the amount of $1,105,000, (2004 Mortg. at ECF p. 3-4), the 2006 Mortgage securing the 2006 Note in the amount of $395,000, (2006 Mortg. at ECF p. 4-5), and the Consolidated Mortgage securing the Consolidated Note in the amount of $1,500,000, (Consol. Mortg. at ECF p. 1-2). Elliott admitted executing all three mortgages and the CEMA. (Elliott's 56.1 Counterstmt. ¶¶ 4-7; see Compl. ¶¶ 20-21 (describing the 2006 Mortgage); Answer at 1-2 (not denying paragraphs 20 and 21 of Plaintiff's Complaint). Thus, for the purposes of Plaintiff's prima facie case, Plaintiff has established that there is a mortgage on the Property. As discussed below, in its

evidence of Elliott's default, (Elliott's 56.1 Counterstmt. ¶ 15 (admitting that Elliott "did not make payment due on August 1, 2009"); Marks Aff. ¶ 14 ("Defendant defaulted on the [Consolidated] Loan by failing to timely make the payment due August 1, 2009, and all payments due thereafter."); 90-Day Notices; Notice of Default).

   B.   Plaintiff's Standing

      Elliott argues that Plaintiff lacks standing to foreclose, (Elliott's Opp. at 3-6), while Plaintiff maintains that it has standing because it was both the assignee and the holder of the Consolidated Note at the commencement of this action.  (Pl.'s Br. at 10-12.)  The Court construes Elliott's arguments as follows: (1) Plaintiff cannot show that it acquired Elliott's Consolidated Loan with the MPA or the LSA because neither agreement refers to

---

forthcoming motion for a judgment of foreclosure and sale, Plaintiff is directed to brief the issue of whether the 2004 Mortgage and 2006 Mortgage are operative, or whether they were superseded and extinguished by the CEMA and Consolidated Mortgage.  Compare Nucci v. Phh Mortg. Corp., No. 14-CV-2683, 2016 WL 1070815, at *4-5 (E.D.N.Y. Mar. 16, 2016) (citations omitted) (finding that the parties' execution of a CEMA consolidating two existing mortgages and the promissory notes secured by them "did not extinguish or replace the two existing mortgages" where "no new money was included in the CEMA"), aff'd, 679 F. App'x 48 (2d Cir. 2017), with Plotch v. Wells Fargo Bank, N.A., No. 17-CV-0309, 2018 WL 344967, at *4 (E.D.N.Y. Jan. 9, 2018) (appeal filed) (holding that consolidated mortgage supersedes the prior mortgages where the language of the CEMA so provides).  The Court notes that it makes no determination regarding Plaintiff's priority as against other lienholders.

the loan, (Elliott's Opp. at 2-4); (2) Plaintiff's proof of standing, based on "bald, conclusory allegation[s]," is deficient, (Elliott's Opp. at 11-14); (3) the 2004 Note, which was consolidated into the Consolidated Note, may not have been properly transferred, (Elliott's Opp. at 1-2); (4) Plaintiff cannot prove that it is the holder in due course of the 2004 Note, (Elliott's Opp. at 6-11); and (5) Plaintiff produced two versions of the 2004 Note, which creates an issue of fact to preclude summary judgment, (Elliott's Opp. at 2).[14]  In reply, Plaintiff maintains that it has established standing, (Pl.'s Reply at 3-7), it does not need to show that it is a holder in due course, (Pl.'s Reply at 5-7), its evidence is proper and sufficient, (Pl.'s Reply at 7-9), and Elliott abandoned her counterclaims and remaining defenses, (Pl.'s Reply at 9).

1. The Consolidated Note

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that,

---

[14] In her Counterstatement, Elliott "disputes the validity of the consolidation of the mortgages" and "objects . . . as to the propriety of the relief sought by this Plaintiff, vis-à-vis the mortgage chain and ownership of the Note and the defects contained therein," but in support, she cites only the Complaint, the Brandi Affirmation, and the various notes, mortgages, and assignments. (See, e.g., Elliott's 56.1 Counterstmt. ¶¶ 5, 15.)  As these documents do not in themselves establish that the consolidation of the mortgages was invalid or that Plaintiff does not "own" the Consolidated Note, the Court considers these conclusory "objections" only insofar as they are argued in Elliott's Opposition.

19

when the action was commenced, it was either the holder or assignee of the underlying note.'" OneWest Bank, N.A. v. Melina, 827 F.3d 214, 222 (2d Cir. 2016) (quoting Wells Fargo Bank, N.A. v. Rooney, 132 A.D.3d 980, 981, 19 N.Y.S.3d 543, 544 (2015)).  Notably, "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" Id. (quoting U.S. Bank, N.A. v. Collymore, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578, 580 (2009)) (citing Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d 355, 361, 34 N.E.3d 363, 366, 12 N.Y.S.3d 612 (2015)).

Plaintiff has presented unrebutted evidence that at the time it commenced this action, it was the holder of the Consolidated Note.  "'Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff.'" E. Sav. Bank, FSB v. Thompson, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting Wells Fargo Bank, N.A. v. Ostiguy, 127 A.D.3d 1375, 1376, 8 N.Y.S.3d 669, 671 (App. Div. 3d Dep't 2015)) (citations omitted).  Accordingly, standing based on physical possession of a note requires that the plaintiff show "(1) possession of the note, either indorsed in blank or specially indorsed to the plaintiff, at the time the

action was commenced; and (2) that the note was received by physical delivery." Id. (citations omitted).

Plaintiff has demonstrated that it received the Consolidated Note by physical delivery and that it possessed the Consolidated Note--which, by allonge, contains an indorsement in blank, (Consol. Note at ECF p. 7.)--at the time it filed the Complaint. Jacobson, an attorney for Plaintiff, affirmed under penalty of perjury that his law firm received the original Consolidated Note, with allonges, on or about May 15, 2014, had physical possession of it on the date this action was commenced, July 28, 2015, and retained possession through the date of his affirmation, January 30, 2017. (Jacobson Affirm. ¶¶ 1, 3-4.)[15] Jacobson also affirmed that he personally reviewed the Consolidated Note attached to his affirmation. (Jacobson Affirm. ¶ 2.) Additionally, Marks, an Assistant Vice President of Plaintiff's Litigation Department, testified in her affidavit that "Plaintiff obtained physical possession of . . . the original indorsed [Consolidated] Note from IndyMac Federal. On or after March 19, 2009, but prior to commencement of this action on July 28, 2015, the original [Consolidated] Note with allonges w[as] delivered to counsel, who remains in possession of the

---

[15] The Court disposed of Elliott's objections to the admissibility of the Jacobson Affirmation and Marks Affidavit supra at Discussion Section I.

original [Consolidated] Note with allonges to date."  (Marks Aff. ¶¶ 1, 12.)

Elliott objects to the lack of specificity in the Marks Affidavit and Jacobson Affirmation, arguing that they "fail[ ] to state the date of transfer, how the Note was received and by whom," "make[ ] absolutely no reference as to the manner in which the documents were received and indexed," and "provide[ ] not [sic] facts as to what documents were reviewed." (Elliott's Opp. at 11-13.)  Elliott's argument relies on Flagstar Bank, FSB v. Anderson, 129 A.D.3d 665, 12 N.Y.S.3d 118 (App. Div. 2d Dep't 2015), where the court found the plaintiff's affidavits insufficient because they "contained conclusory statements regarding the plaintiff's possession of the note, without any factual details of a physical delivery."  Id. at 665-66, 12 N.Y.S.3d at 119 (citations omitted).

Elliott's argument fails.  First, Flagstar is inapposite because Plaintiff's evidence details a physical delivery.  (See Jacobson Affirm. ¶ 3 ("On or about May 15, 2014 [(before commencement of this action)] Windels received the original collateral file for the mortgage loan at issue in the above reference[d] case, which contained the original consolidated note dated October 18, 2006 and executed by Elliot[t] with two allonges . . . ."); Marks Aff. ¶ 12.)  Second, eight days after the Second Department decided Flagstar, the New York Court of Appeals held that to establish standing, an affidavit need not

22

detail how a plaintiff came into possession of a note. Aurora
Loan Servs., LLC, 25 N.Y.3d at 362, 34 N.E.3d at 366-67, 12
N.Y.S.3d at 615-16 ("Although the better practice would have been
for [the plaintiff] to state how it came into possession of the
note in its affidavit in order to clarify the situation completely,
we conclude that, under the circumstances of this case, the court
did not err in granting summary judgment to [the plaintiff].").
As the Second Circuit explained in another of Plaintiff's
foreclosure actions, "[f]ollowing Aurora, New York courts have
repeatedly held that proof of physical possession--such as the
affidavits of OneWest's corporate representative and counsel in
this case--is sufficient on its own to prove a plaintiff's standing
to foreclose on the mortgage associated with the note." Melina,
827 F.3d at 223 ("OneWest thus had no obligation to provide details
pertaining to the transfer or delivery of [the defendant's] [n]ote
in order to prove its standing to foreclose on the associated
mortgage.").  Therefore, the Marks Affidavit and Jacobson
Affirmation provided sufficient evidence of physical possession to
prove its standing to foreclose on the mortgage associated with
the Consolidated Note.

    Plaintiff also established its standing as the assignee
of the Consolidated Note.  "In New York, standing to foreclose may
be established by 'a written assignment of the underlying note.'"
Id. (quoting Onewest, F.S.B. v. Goddard, 131 A.D.3d 1028, 1029, 17

N.Y.S.3d 142 (App. Div. 2d Dep't 2015)). "'No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it.'" Id. (quoting Suraleb, Inc. v. Int'l Trade Club, Inc., 13 A.D.3d 612, 612, 788 N.Y.S.2d 403, 404 (App. Div. 2d Dep't 2004)).

MortgageIt indorsed and transferred the Consolidated Note to IndyMac, (Marks Aff. ¶ 7; see Consol. Note at ECF p. 5), and IndyMac's assets were subsequently transferred to IndyMac Federal, (Pl.'s 56.1 Stmt. ¶ 11); see FDIC, Failed Bank Information, Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA, https://www.fdic.gov/bank/individual/failed/indymac.html; Melina, 827 F.3d at 216 ("In July 2008 . . . the [OTS] created a new entity, IndyMac Federal . . . [and] transferred IndyMac's assets to IndyMac Federal."). Pursuant to the MPA and LSA between Plaintiff and FDIC as receiver for IndyMac Federal, Plaintiff acquired Elliott's Consolidated Loan. (Pl.'s 56.1 Stmt. ¶¶ 12-13.) Elliott baselessly alleges that "[n]either the [LSA] nor the [MPA] make any reference whatsoever that the subject loan was, indeed, transferred pursuant to the Agreement," (Elliott's Opp. at 2-3), but her allegation contradicts her admission of this fact in her Counterstatement, (Elliott's 56.1 Counterstmt. ¶¶ 12-13), and ignores Plaintiff's production of a schedule to the LSA identifying the Consolidated Loan.

The "LSA provided that FDIC, as receiver and conservator for IndyMac Federal, would 'sell[ ], transfer[ ], convey[ ], assign[ ] and deliver[ ]' to [Plaintiff], and [Plaintiff] would 'purchase[ ], accept[ ] and assume[ ] from [FDIC] . . . all of [FDIC's] rights, title and interests in, to and under' certain defined assets." Melina, 827 F.3d at 223 (sixth and seventh alterations added; ellipsis in original); LSA at § 2.01(a). The assets transferred included all "rights, title and interests in, to and under the Loans (including all Notes, the other Loan Documents and Related Agreements) identified on the Loan Schedule attached hereto as Attachment A, endorsed without recourse, on a servicing-released basis." LSA at § 2.01(a)(i) (emphasis in original). Plaintiff supplied the relevant page of the referenced Loan Schedule--Attachment A to the LSA, (Loan Schedule, Marks Aff. Ex. F, Docket Entry 53-15)--which identifies Elliott's Consolidated Loan with information including the Property's address, the maturity date of November 1, 2046 reflected in the Consolidated Note, (Consol. Note at ECF p. 2), and a redacted number ending in 5085, which accords with the number under which Plaintiff serviced the Consolidated Loan, (Pl.'s 56.1 Stmt. ¶ 9). (See Loan Schedule.) As the Second Circuit has explained in reference to the same agreement, "[t]he LSA thus assigned to [Plaintiff] all of the rights that FDIC previously had to [the defendant's] loan as the conservator and receiver of IndyMac

Federal--and this assignment sufficed to give [Plaintiff] standing to foreclose." Melina, 827 F.3d at 223.

In sum, Plaintiff has established its standing as both the holder and the assignee of the Consolidated Note prior to the commencement of this action, and the mortgage passes with the note by operation of law. See id. at 222 (quoting Collymore, 68 A.D.3d at 754, 890 N.Y.S.2d 580) (citing Taylor, 25 N.Y.3d at 361, 34 N.E.3d 363, 12 N.Y.S.3d 612) ("'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'").

### 2. The 2004 Note

Elliott's remaining arguments relate to the 2004 Note, not the Consolidated Note pursuant to which Plaintiff brought this action. It appears that these arguments challenge whether the consolidation that resulted in the Consolidated Note was valid.

While less than clear from her briefing, the Court construes Elliott's first such argument as follows: The consolidation of the mortgage loans that led to the execution of the Consolidated Note was invalid since Plaintiff "wholly ignore[s]" the 2004 Note's indorsement from Lehman Brothers Bank, F.S.B. to Lehman Brothers Holdings Inc. (Elliott's Opp. at 1-2.) Elliott's position is rooted in the CEMA that Plaintiff supplied,

which defines the 2004 Loan as a mortgage secured by a note "in favor of Lehman Brothers Bank, FSB." (Elliott's 56.1 Counterstmt. ¶¶ 5, 7 (citing CEMA); CEMA at ECF p. 31.)  Elliott argues that the indorsement to Lehman Brothers Holdings Inc. "is critical to the question of whether [Lehman Brothers Bank, F.S.B.] even owned the [2004] Note when . . . the [2004] Note purportedly transferred[ ] to MERS as nominee for MortgageIt." (Elliott's Opp. at 1-2, 7.)

Elliott's argument is based on her misunderstanding--or misrepresentation--of the facts.  Elliott herself "wholly ignores" the further indorsement of the 2004 Note, in blank, by Lehman Brothers Holdings Inc.  (2004 Note at ECF p. 6.)  Under New York law, "[a]n instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated"--transferred "in such form that the transferee becomes a holder," N.Y. U.C.C. Law § 3-202(1)--"by delivery alone."  N.Y. U.C.C. Law § 3-204(2). Regardless of any previous indorsement, the 2004 Note--payable to order and indorsed in blank--could be negotiated by delivery alone, see id. §§ 3-202(1) & 3-204(2), and the holder could then enforce it, negotiate it, or consolidate it into the Consolidated Note, see id. § 3-301.  Thus, Elliott's discussion of a prior indorsement is irrelevant.  See Official Cmt. to N.Y. U.C.C. § 3-204 ("The special indorsee"--the person to whose order a special indorsement makes an instrument payable (here, Lehman Brothers Holdings Inc.)-

27

–"may of course make [the instrument] payable to bearer again by himself indorsing in blank.").

Elliott also argues that Plaintiff must establish that it was the "holder in due course" of the 2004 Note or the Consolidated Note or both, because "there is no presumption that Plaintiff had or has 'ownership' of the Note not subject to UCC § 3-306 [Rights of One Not Holder in Due Course] defenses." (See Elliott's Opp. at 5-11); see also N.Y. U.C.C. Law § 3-305 ("To the extent that a holder is a holder in due course[,] he takes the instrument free from (1) all claims to it . . . and [with some exceptions,] (2) all defenses of any party to the instrument with whom the holder has not dealt . . . ."). This contention relies on the same faulty premise that the 2004 Note was "endorsed out to another entity prior to this Plaintiff entering into the mortgage chain," (Elliott's Opp. at 3), and ignores the 2004 Note's indorsement in blank and consolidation into the Consolidated Note. Elliott's argument, consisting largely of block quotations from cases decided in 1930 and 1873, fails, because she has not established any claims or defenses that would require Plaintiff to prove that it is the holder in due course of the Consolidated Note.[16] See Carlin v. Jemal, 68 A.D.3d 655, 656, 891 N.Y.S.2d 391,

---

[16] For example, Elliott cites Bevelyn Realty Corp. v. Brooklyn Construction Co., 140 Misc. 74, 75, 249 N.Y.S. 41 (App. Term 2d Dep't 1930), for the proposition that "the only entity that can take a Note not subject to the defenses of the maker, is a

392 (App. Div. 1st Dep't 2009) (citations omitted) ("Even if plaintiff is not a holder in due course, but only a holder or assignee/transferee, and thus subject to all defenses, he is entitled to summary judgment, since defendants failed to raise a triable issue of fact regarding their proffered defenses.").

Elliott's final argument, that a question of fact exists because Plaintiff produced during discovery "a wholly different 'version' of the [2004] Note . . . , which did not contain the endorsement," fares no better. (Elliott's Opp. at 2; see 2004 Note Without Indorsements, Brandi Decl. Ex. B, Docket Entry 55-3.) Nothing in the "different version" of the 2004 Note undermines the validity of the consolidation. (See generally 2004 Note Without Indorsements.) Moreover, Plaintiff explains that it produced this "different version" of the 2004 Note in response to Elliott's discovery demands, and that the version "was an image of the note as it exists in Plaintiff's system--not a copy of the

---

holder with rights in due course." (Elliott's Opp. at 5-7 (emphasis in original).) Her reliance is misplaced. First, as described herein, Elliott has not supplied evidence of any applicable defenses. Second, Bevelyn Realty Corp. is inapposite. There, the New York Supreme Court Appellate Term, Second Department relied on the Negotiable Instruments Law in holding that the plaintiff was not a "holder in due course" that could take a note free of a defense because the plaintiff "took the note after it was overdue and had been dishonored." Bevelyn Realty Corp., 140 Misc. at 75, 249 N.Y.S. at 41. The facts are inapplicable, and the Court notes that the Negotiable Instruments Law was replaced by the Uniform Commercial Code effective 1964, Otten v. Marasco, 353 F.2d 563, 565 n.1 (2d Cir. 1965).

original of that note as it appears today." (Pl.'s Reply at 4 n.3.) The Court agrees that "a pdf image in Plaintiff's records" of a different version of the 2004 Note is irrelevant to the merits of Plaintiff's claim. (Pl.'s Reply at 4 n.3.)

    C.  <u>Elliott's Counterclaims and Remaining Defenses</u>

As discussed, Elliott's Answer contained fourteen affirmative defenses and two counterclaims, summarized as follows:

- Lack of personal jurisdiction ("First Affirmative Defense," Answer ¶¶ 11-12);
- Lack of standing ("Second Affirmative Defense," Answer ¶¶ 13-21; "Third Affirmative Defense," Answer ¶¶ 22-28; "Fourth Affirmative Defense," Answer ¶¶ 29-34; "Fifth Affirmative Defense," Answer ¶¶ 35-40; "Ninth Affirmative Defense," Answer ¶¶ 48-52; "Tenth Affirmative Defense," Answer ¶¶ 53-56);
- Failure to state a cause of action ("Sixth Affirmative Defense," Answer ¶¶ 41-42);
- Mortgage loans are unenforceable ("Seventh Affirmative Defense," Answer ¶¶ 43-44);
- Failure to comply with RPAPL § 1302 ("Eighth Affirmative Defense," Answer ¶¶ 45-47);
- Failure to comply with RPAPL §§ 1303 and 1320 ("Eleventh Affirmative Defense," Answer ¶¶ 57-60);
- Failure to comply with RPAPL § 1304 ("Twelfth Affirmative Defense," Answer ¶¶ 61-63);
- Failure to exhaust administrative, statutory, and/or jurisdictional prerequisites ("Thirteenth Affirmative Defense," Answer ¶¶ 64-66);
- Failure to verify Complaint ("Fourteenth Affirmative Defense," Ans. ¶¶ 67-68);
- Counterclaimswerfor quiet title ("First Counterclaim," Answer ¶¶ 69-83; "Second Counterclaim," Answer ¶¶ 84-89).

In its moving brief, Plaintiff enumerated and briefed each of these affirmative defenses and counterclaims, arguing that they lacked merit. (Pl.'s Br. at 9-16.) Plaintiff unambiguously

moved for summary judgement on its claims, as well as Elliott's counterclaims and defenses. (Pl.'s Br. at 1 (Plaintiff "submits this memorandum in support of its motion . . . for an order granting summary judgment in its favor as to its Complaint . . . and as to the claims and defenses asserted in the 'Answer,' . . . of defendant Ellen M. Elliot[t].").) In opposition, Elliott argued only the affirmative defense of standing and disregarded Plaintiff's discussion of the counterclaims and remaining affirmative defenses. (See generally Elliott's Opp.) Accordingly, Elliott abandoned her counterclaims and remaining defenses.[17] See Onewest Bank, N.A. v. Rosado, No. 14-CV-9917, 2016 WL 3198305, at *4 (S.D.N.Y. June 7, 2016) (citing Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir. 2014)) ("Plaintiff addressed each of these fifteen affirmative defenses and counterclaims in its brief in support of its motion for summary judgment. In failing to respond on any of these issues, except the sufficiency of the notice of default and the sufficiency of the evidence that the notice of default was mailed, Defendants have abandoned those unaddressed claims.").

---

[17] The abandoned defenses and counterclaims are: First Affirmative Defense, Sixth Affirmative Defense, Seventh Affirmative Defense, Eighth Affirmative Defense, Eleven Affirmative Defense, Twelfth Affirmative Defense, Thirteenth Affirmative Defense, Fourteenth Affirmative Defense, First Counterclaim, and Second Counterclaim.

However, because Elliott denies receiving RPAPL § 1304 90-day notices and the notice of default, (Elliott's 56.1 Counterstmt. ¶¶ 17, 20), the Court briefly addresses whether Plaintiff has proffered adequate evidence of its compliance.

RPAPL § 1304, in the context of "home loans," requires that a lender, assignee, or mortgage loan servicer send a notice to the borrower at least ninety days before commencing an action for mortgage foreclosure. N.Y. REAL PROP. ACTS. LAW § 1304(1). RPAPL § 1304 defines a "home loan," with reference to, among other elements, a loan "secured by a mortgage . . . on real estate improved by a one to four family dwelling . . . which is or will be occupied by the borrower as the borrower's principal dwelling." Id. § 1304(6)(a)(iii).

Elliott submitted an affidavit testifying that the Property is a rental property, and at the time the action was commenced and for one year prior (including the time when Plaintiff sent the notices at issue), she did not reside there. (Elliott Aff. ¶¶ 2-7 ("I do not reside at the Premises, and did not live there at the time of the alleged service on July 30, 2015, nor for over a year prior to that date.").) Thus, the Consolidated Loan was not a "home loan" and Plaintiff was not obligated to comply with RPAPL § 1304.[18]  See Bayview Loan Servicing, LLC v. Akande,

---

[18] Citing only an affidavit submitted with her motion to dismiss in which Elliott testifies that she does not live at the Property,

154 A.D.3d 694, 695, 61 N.Y.S.3d 647, 649 (App. Div. 2d Dep't 2017) (Citations omitted) ("Here, the plaintiff's submissions in support of its motion demonstrated, prima facie, that the subject loan was not a "home loan" within the meaning of RPAPL 1304, and that it was therefore not required to comply with the statutory notice provisions.").

Separately, Sections 15 and 22 of the mortgages require that before demanding immediate payment of the unpaid balance of the loan, Plaintiff must send a notice of default to "the address of the Property," unless Elliott gives notice of different address. (2004 Mortg. §§ 15, 22.)[19]  Elliott does not argue that the content of the notice of default was defective, but only that Elliott did not receive it.[20]  (Elliott's 56.1 Counterstmt. ¶ 20.)  Thus, the

_____

Elliott claims that she now resides at the Property.  (Elliott's 56.1 Counterstmt. ¶ 16; Elliott Aff. ¶¶ 2-7.)  Even if Elliott's claim were true, the analysis would not change.  If she did move to the Property, she did so only after filing her motion to dismiss in this matter, and thus, with knowledge that the Property is subject to a foreclosure proceeding.

[19] The 2006 Mortgage and the Consolidated Mortgage contain identical language in their Sections 15 and 22.  (2006 Mortg. §§ 15, 22; Consol. Mortg. §§ 15, 22.)  For convenience, when referring to these sections in the three mortgages, the Court will cite only to the 2004 Mortgage.

[20] It is irrelevant that Elliott did not live at the Property when Plaintiff sent her the default notice.  (See Elliott Aff. ¶¶ 2-7.)  The mortgages set the notice address as "the address of the Property unless [Elliott] give[s] notice to Lender of a different address."  (2004 Mortg. § 15 ("I will promptly notify Lender of my change of address. . . .  There may be only one designated notice address . . . at any one time.").)  Elliott

33

Court restricts its review to whether Plaintiff's proof of mailing is sufficient.

Plaintiff has proffered sufficient proof that it mailed the default notice as required by the mortgages. The Marks Affidavit details how and when the notice was mailed. (Marks Aff. ¶¶ 15-18.) Further, Plaintiff provided a copy of the notice. (See Notice of Default.) As in Rosado, where the Southern District of New York found the proof of mailing to be adequate, "[t]he first page of [the] notice appears to be a mailing label and bears a printed U.S. Postal Service tracking number and bar code to reflect the mailing along with the comment where a postage stamp ordinarily would be located 'PRESORT First-Class Mail U.S. Postage and Fees Paid WSO.'" Rosado, 2016 WL 3198305, at *2. Additionally, like in Rosado, Plaintiff submitted a business record cataloging its mailing, which includes a tracking number corresponding to the notice of default, the loan number, the type of mail (first-class), the date mailed, and the status of the mailing. (Mailing Record, Marks Aff. Ex. J, Docket Entry 53-19, at 3 line 20.)[21]   The mailing

---

has not suggested or submitted evidence demonstrating that she notified Plaintiff that her address had changed, and therefore, the notice was properly sent to the Property.

[21] The Marks Affidavit lays a proper foundation for the introduction of this record, which fits within Federal Rule of Evidence 803(6)'s "records of a regularly conducted activity" hearsay exception. FED. R. EVID. 803(6). Marks demonstrated her familiarity with how Plaintiff tracks its mailed correspondence and testified that the record memorialized the mailings pursuant to Plaintiff's regular practice, "at or near the time of mailing

record shows that the default notice was mailed on February 11, 2015, and the mailing was "confirm[ed]" via a "USPS® Event." (Mailing Record.)  Accordingly, Plaintiff has demonstrated that it complied with Sections 15 and 22 of the mortgages.  Rosado, 2016 WL 3198305, at *2 (finding similar evidence to be sufficient proof that notice of default was mailed).

<u>CONCLUSION</u>

        For the foregoing reasons, Plaintiff's motion (Docket Entry 53) is GRANTED IN PART and DENIED IN PART.  The Court GRANTS Plaintiff summary judgment against Elliott and DISMISSES WITH PREJUDICE Elliott's Answer with Counterclaims (Docket Entry 29). The Court DENIES WITHOUT PREJUDICE Plaintiff's requests for the appointment of a Referee to effectuate a sale of the Property and to disperse the funds from the sale, and for permission to treat the Answer as a limited Notice of Appearance.  Plaintiff is GRANTED leave to file a motion for a judgment of foreclosure and sale that fully addresses these requests, contains support for its calculation of damages, suggests three candidates from which the Court can select a Referee, and attaches a proposed judgment.  In its motion, Plaintiff is directed to brief the issue of whether the 2004 Mortgage and 2006 Mortgage control, or whether they were

---

by, or from information provided by, persons with knowledge of the mailing."  (Marks Aff. ¶ 18); <u>see</u> FED. R. EVID. 803(6).

replaced and extinguished by the CEMA and Consolidated Mortgage.

See supra note 13.



                                    SO ORDERED.


                                    /s/ JOANNA SEYBERT
                                    Joanna Seybert, U.S.D.J.

Dated:    March   31  , 2018
          Central Islip, New York