**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CIT BANK, N.A.,

                        Plaintiff,                  **REPORT AND**
                                                           **RECOMMENDATION**
                 -against-                    **CV 15-4395 (JS) (ARL)**

ELLEN M. ELLIOT, et al.,

                        Defendants.
----------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      This matter has been referred to the undersigned by District Judge Seybert for the purpose of issuing a report and recommendation with regard to CIT Bank, N.A.'s ("Plaintiff") motion for damages, appointment of a referee, computation of sums due and a judgment of foreclosure and sale as well as for a determination of the appropriate amount of sums due, if any. For the reasons set forth below, the undersigned respectfully recommends that Plaintiff be awarded a Judgment of Foreclosure and Sale against the defendant Ellen M. Elliot ("Defendant" or "Elliot"), under the supervision of a referee to be selected by Judge Seybert, reflecting the following amounts to be awarded to Plaintiff.: (a) escrow advances in the amount of $36,024.40; (b) late fees in the amount of $9,647.28; and (c) costs in the amount of $3,572.83. The undersigned further recommends that the remainder of Plaintiff's request for damages be denied, without prejudice to renewal if Plaintiff provides an adequate explanation of and support for its requests.

## BACKGROUND

      The Court presumes familiarity with the facts and procedural history of this case and only includes those facts that are necessary for resolution the instant motion.

Plaintiff, CIT Bank, N.A., f/k/a OneWest Bank N.A. f/k/a OneWest Bank, FSB ("OneWest"), commenced this action on July 28, 2015, against Elliott, Keyhole Capital - Fund V, Portfolio Recovery Associates LLC and John Does No. 1-10 pursuant to New York Real Property Actions and Proceedings Law ("RPAPL"), §§ 1301 *et seq.,* seeking to foreclose on a mortgage encumbering the property commonly known as 167 Soundview Drive, Montauk, New York 11954.[1] On July 25, 2016, the Court dismissed the John Doe defendants and corrected the caption to reflect Plaintiff OneWest's name change to CIT Bank, N.A. On July 21, 2017, the Clerk of the Court entered a certificate of default against Keyhole Capital – Fund V and Portfolio Recovery Associates LLC. ECF No. 54. On March 31, 2018, Judge Seybert granted, in part, and denied, in part, Plaintiff's motion for summary judgment. *See CIT Bank N.A. v. Elliott*, No. 15-CV-4395(JS)(ARL), 2018 U.S. Dist. LEXIS 58315 (E.D.N.Y. Mar. 31, 2018). Judge Seybert granted Plaintiff's motion for summary judgment against Elliot and dismissed with prejudice Elliot's Answer with counterclaims. *Id*. at * 33. Judge Seybert denied Plaintiff's request for the appointment of a referee to effectuate a sale of the property and to disperse the funds from the sale. *Id.* Plaintiff was given leave to file the instant motion for a judgment of foreclosure and sale to fully address its calculation of damages, suggest three candidates from which the Court could select a referee, and attach a proposed judgment. *Id.* Plaintiff was also directed to brief the issue of whether the 2004 Mortgage and 2006 Mortgage control, or whether they were replaced and extinguished by the CEMA and Consolidated Mortgage. *Id.* at * 16, n. 13.

Plaintiff filed this motion for computation of damages and judgment of foreclosure on June 20, 2018. ECF No. 59. In support of its claim for damages, Plaintiff submits the Declaration of Sean K. Monahan, counsel for Plaintiff ("Monahan Decl."), as well as the

---

[1] A Certificate of Merit pursuant to CPLR 3012-b was filed contemporaneously with the Complaint. ECF No. 3.

2

Affidavit of Tensia Brooks, Assistant Secretary at LoanCare LLC, a servicer for CIT Bank ("Brooks Aff."). Plaintiff annexed the underlying documentation in support of its request for damages to the Brooks Affidavit. *See* Brooks Aff. Exs. 1-6. Also on June 20, 2018, Plaintiff separately provided the Court with the names of three proposed referees. ECF No. 60. On October 29, 2018, Defendant filed an Affirmation in Opposition to Motion to Confirm Referee's Report (Def. Opp.") in opposition to Plaintiff's motion. ECF No. 67. Shortly thereafter, Plaintiff filed a Reply to Defendant's Opposition To Plaintiff's Motion for Appointment of a Referee, Computation of Sums Due and A Judgment of Foreclosure and Sale. ECF No. 69. This motion was referred to the undersigned by Judge Seybert on October 11, 2018.

Plaintiff points to three mortgages in this action. According to the Complaint, in November 2010, Elliot obtained a mortgage loan in the amount of $1,105,000 from nonparty Lehman Brothers Bank, FSB on the property located in Montauk, New York (the "2004 Note") secured by a mortgage on the Property (the "2004 Mortgage," and together with the 2004 Note, the "2004 Loan"). Compl. ¶ 13. On October 18, 2006, Elliott borrowed an additional $395,000 from MortgageIt, Inc. ("MortgageIt"). *Id*. at ¶ 20. Elliott executed a note (the "2006 Note") secured by a mortgage (the "2006 Mortgage," and together with the 2006 Note, the "2006 Loan"). *Id*. at ¶ 21. Finally, Plaintiff alleges that on October 18, 2006, Elliott consolidated the 2004 Loan and the 2006 Loan into a single loan from MortgageIt in the original principal amount of $1,500,000 (the "Consolidated Loan"), secured by the 2004 and 2006 Mortgages on the Property and memorialized in a consolidated note (the "Consolidated Note"). *Id*. at ¶ 26. Elliott also executed a mortgage dated October 18, 2006, securing the Consolidated Note with the Property (the "Consolidated Mortgage"). *Elliot*, 2018 U.S. Dist. LEXIS 58315 at *4.

Additionally, Elliott entered into a Consolidation, Extension and Modification Agreement ("CEMA") with MortgageIt dated October 18, 2006. *Id*.

Thus, the three mortgages identified are the 2004 Mortgage securing the 2004 Note in the amount of $1,105,000, the 2006 Mortgage securing the 2006 Note in the amount of $395,000, and the Consolidated Mortgage securing the Consolidated Note in the amount of $1,500,000. Elliot admitted executing all three mortgages and the CEMA. Elliott's 56.1 Counterstmt. ¶¶ 4-7, ECF No. 41. Elliot defaulted on the mortgage loan payments in August 2009, and despite notices of default, failed to cure or make any payments. *Id.* at ¶ 32.

## DISCUSSION

As noted above, Judge Seybert has already granted summary judgment against Elliot. In that Order, Plaintiff was directed to brief the issue of whether the 2004 Mortgage and 2006 Mortgage control, or whether they were replaced and extinguished by the CEMA and Consolidated Mortgage. Accordingly, the Court begins its analysis with the determination of the operative instrument.

### A. The Operative Instrument

Plaintiff argues that the Consolidated Note, CEMA and Consolidated Mortgage are the operative instruments, but the 2004 Mortgage and the 2006 Mortgage were not extinguished. Memorandum of Law in Support of Motion for Computation of Damages and Judgment of Foreclosure and Sale at 2. According to Plaintiff, the CEMA states that "By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages. . . This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan." *Id.* at 2. The CEMA further states "Lender and I agree that the terms of the Notes are changed and

4

reinstated to be the terms of the 'Consolidated Note'" and "Lender and I agree that the terms of the Mortgages are changed and reinstated to be the terms of the 'Consolidated Mortgage.'" Thus, according to Plaintiff, the Consolidated Note, CEMA and Consolidated Mortgage have consolidated into one lien, and superseded the terms of, the 2004 and 2006 Mortgages, and are therefore the operative agreements - but the 2004 and 2006 Mortgages remain as liens against the Property, subject to foreclosure.  Defendant does not oppose Plaintiff's position.

This position is consistent with both *Plotch v. Wells Fargo Bank, N.A.*, No. 17-CV-0309, 2018 U.S. Dist. LEXIS 3793, 2018 WL 344967, at *4 (E.D.N.Y. Jan. 9, 2018) (appeal filed) (holding that consolidated mortgage supersedes the prior mortgages where the language of the CEMA so provides) and *Nucci v. PHH Mortg. Corp.*, No. 14-CV-2683, 2016 U.S. Dist. LEXIS 34017, 2016 WL 1070815, at *4-5 (E.D.N.Y. Mar. 16, 2016)(finding that the parties' execution of a CEMA consolidating two existing mortgages and the promissory notes secured by them "did not extinguish or replace the two existing mortgages" where "no new money was included in the CEMA"), *aff'd*, 679 F. App'x 48 (2d Cir. 2017).  The court in *Nucci* held that execution of the CEMA did not constitute an "new" mortgage because no money was included, however, "by signing the CEMA, Plaintiff agreed to be bound by its terms, as well as the documents annexed to it and to which it specifically referred, i.e., the Consolidated Mortgage." *Id.* at * 13. As explained by the New York Court of Appeals, "[t]he courts recognize the well-settled principle that a consolidation 'agreement is an instrument of convenience for the contracting parties only.'  A consolidation agreement, however, 'cannot adversely affect, impair or derogate the priorities of any lien which has intervened between the respective dates of execution and delivery of the two consolidated mortgages.'  Rather, 'for purposes of determining priority when there is an intervening lien, the mortgages retain their separate-lien

5

status.' In that scenario, the consolidation agreement would not be considered the 'first mortgage of record.'" *Plotch v Citibank, N.A.,* 27 N.Y.3d 477, 483 34 N.Y.S.3d 394, 54 N.E.3d 66 (2016) (quoting *Dime Sav. Bank of N.Y. v Levy*, 161 Misc 2d 480, 615 NYS2d 218 (Sup. Ct, Rockland County 1994). The Court noted that where no there are no intervening liens the consolidation agreement governs. *Id.*

The Court in *Plotch* noted that to hold "otherwise would simply re otherwise would lead to only additional steps in the consolidation process." *Plotch*, 2018 U.S. Dist. LEXIS 3793, at * 12 (citing *Citibank, N.A.,* 27 N.Y.3d at 483-84 ("Banks . . . would simply take additional steps to satisfy the original mortgage, take out a new mortgage, and pay the additional fees required to achieve precisely the same result.")). Thus, where the parties have entered into a CEMA for purposes of consolidating existing mortgages, rather than refinancing those mortgages, the CEMA becomes the operative instrument governing the rights and obligations of the parties, however the underlying mortgages are not extinguished.

Accordingly, the undersigned respectfully recommends that the CEMA, Consolidated Note and Consolidated Mortgage be deemed the operative instrument in this proceeding.

**B.    Judgment of Foreclosure**

"Under New York law, a plaintiff is entitled to foreclosure 'as a matter of law through the production of the mortgage, the unpaid note, and evidence of default.'" *BH99 Realty, LLC v. Qian Wen Li*, No. 10-CV-0693 (FB) (JO), 2011 U.S. Dist. LEXIS 51621, 2011 WL 1841530, at *3 (E.D.N.Y. Mar. 16, 2011); *CIT Bank, N.A. v. Gordon*, No. 17-cv-3972 (ADS) (GRB), 2018 U.S. Dist. LEXIS 149777 (E.D.N.Y. Aug. 20, 2018).

In the event the Judge Seybert adopts this Court's recommendation that the Consolidate Note and Consolidated Mortgage be deemed the operative instrument, Plaintiff has produced

6

copies of the Consolidated Mortgage and Consolidated Note.  Monahan Decl. ¶¶ 4-6; Brooks Aff. ¶¶ 2-4.  On summary judgment, Judge Seybert held that "Plaintiff has established its prima facie case of foreclosure. It has presented the Court with (1) the Consolidated Note that Elliott executed, (Consol. Note; Answer ¶ 7); (2) mortgages on the Property and (3) uncontested evidence of Elliott's default, (Elliott's 56.1 Counterstmt. ¶ 15 (admitting that Elliott "did not make payment due on August 1, 2009"); Marks Aff. ¶ 14 ("Defendant defaulted on the [Consolidated] Loan by failing to timely make the payment due August 1, 2009, and all payments due thereafter."); 90-Day Notices; Notice of Default)." *Elliott*, 2018 U.S. Dist. LEXIS 58315 at * 16.  In its opposition to Plaintiff's motion, Elliot has not presented evidence to overcome Plaintiff's *prima facia* case.  Accordingly, the undersigned respectfully recommends that Judge Seybert, enter and execute a Judgment of Foreclosure and Sale in a form substantially similar to the Proposed Judgment of Foreclosure and Sale (the "Proposed Judgment") submitted by Plaintiff as Exhibit F to the Monahan Declaration[2] and appoint a referee to effectuate the foreclosure and sale of the subject property and to conduct the sale of the mortgaged premises under the circumstances set forth in the Proposed Judgment.

### C. Damages

Plaintiff seeks $1,648,038.90 in unpaid principal as of June 5, 2018 and accrued interest amounting to $530,224.41 through June 8, 2018.  Monahan Decl. ¶ 19.  Plaintiff also seeks "recoverable costs" of $87,845.67, reimbursement of advances made by Plaintiff to cover escrow shortages in the amount of $124,880.79, late fees in the amount of $13,667.08 and other fees in the amount of $550.50.  *Id.*

---

[2] Plaintiff's Proposed Judgment requires the Referee deposit all funds received pursuant to the Judgment with the Clerk of the Court.  The undersigned recommends that this provision be changed to require such funds to be deposited in any local banking institution insured by the FDIC.  *See Gordon*, 2018 U.S. Dist. LEXIS 149777 at n.4.

7

Elliot has objected to Plaintiff's calculations, however counsel misconstrues the application made by Plaintiff and has submitted an opposition to a referee's report despite the fact that no referee has been appointed and no report yet issued. *See* Affirmation in Opposition to Motion to Confirm Referee's Report. ECF No. 67. Nevertheless, it appears Defendant is arguing that there is no documentary support for escrow advances of $124,880.79 and corporate advances of $87,845.67. *Id.* at ¶ 5. Defendant does not challenge the remainder of Plaintiff's calculation.

1. *Principal and Interest*

Plaintiff seeks $1,648,038.90 in unpaid principal as of June 5, 2018 and accrued interest amounting to $530,224.41 through June 8, 2018. According to Plaintiff, the accrued interest totaling $530,224.41 represents unpaid interest on the unpaid principal balance at a rate of 3.75000% from July 1, 2009 through January 31, 2017, at a rate of 3.87500% from February 1, 2017 through June 30, 2017, at a rate of 4.00000% from July 1, 2017 through August 31, 2017, at a rate of 4.12500% from September 1, 2017 through October 31, 2017, at a rate of 4.25000% from November I, 20I 7 through December 31, 2017, at a rate of 4.37500% from January 1, 2018 through February 28, 2018, at a rate of 4.50000% from March 1, 2018 through March 31, 2018, at a rate of 4.57700% from April 1, 2018 through April 30, 2018, at a rate of 4.62500% from May 1, 2018 through May 31, 2018, and at a rate of 4.75000% from June 1, 2018 through June 5, 2018. Monahan Decl., Ex. A. ¶ 7.

Plaintiff nowhere explains how Defendant owes the principal amount of $1,648,038.90 where the Consolidated Mortgage is for $1,500,000.00. In support of its request, Plaintiff provides the Affidavit of Brooks stating that this is the unpaid principal and interest on the loan along with a screenshot indicating this is the amount due but nowhere explains how the figure

8

was derived.  Courts in this district "have found substantially identical evidence to be inadequate to establish damages to a 'reasonable certainty.'"  *CIT Bank, N.A. v. Schiffman*, No. 16 CV 5772 (DLI)(RML), 2018 U.S. Dist. LEXIS 145682 (E.D.N.Y. Aug. 24, 2018) (citing cases), report and recommendation adopted, 2018 U.S. Dist. LEXIS 171423 (E.D.N.Y. Oct. 3, 2018); *see also OneWest Bank, N.A. v. Vaval,* No. 14-CV-3437 (CBA) (PK), 2016 U.S. Dist. LEXIS 93755, 2016 WL 3995342 (E.D.N.Y. July 19, 2016) (plaintiff's request for unpaid principal and interest denied where no explanation offered supporting affidavit's assertion as to the unpaid balance at the time of the default); *OneWest Bank, N.A. v. Louis*, No. 15-CV-00597 (PAC) (BCM), 2016 U.S. Dist. LEXIS 82026, 2016 WL 3552143 (S.D.N.Y. June 22, 2016) (rejecting Plaintiff's submission of a screenshot where it failed to indicate payments made by the defendant prior to default); *OneWest Bank, N.A. v. Hawkins*, No. 14 CV 4656 (NGG), 2015 U.S. Dist. LEXIS 131774 at *19, 2015 WL 5706945 (E.D.N.Y. Sept. 2, 2015) ("plaintiff has not stated anywhere in its papers exactly how many payments were made by defendants prior to the default and the total dollar amounts paid, which are necessary to enable the Court to verify plaintiff's calculation" of unpaid principal).

The Court cannot verify Plaintiff's calculation of the unpaid principal or accrued interest as of June 5, 2018 from the information submitted by Plaintiff.  Accordingly, the undersigned respectfully recommends that Plaintiff's request for a calculation of damages that includes unpaid principal in the amount of $1,648,038.90 as of June 5, 2018 and accrued interest amounting to $530,224.41 be denied, without prejudice to renewal if Plaintiff provides sufficient information from which the Court can verify its figures.

    2.  *Corporate Advances and Escrow Advances*

9

Plaintiff requests an award for "recoverable costs" and escrow advances pursuant to the terms of the Consolidated Mortgage. Monahan Decl. ¶¶ 21, 22. Defendant opposes such request on the grounds that the requests are not properly supported by documentary evidence.

Plaintiff seeks reimbursement of $87,845.67 for "recoverable costs" for "inspection of the property, assessment of the value of the property, and property preservation." Monahan Decl. ¶ 21. Pursuant to Paragraph 9 of the Consolidated Mortgage, in the event of Defendant's default on the loan, Plaintiff had the right to "do and pay for whatever is reasonable or appropriate to protect [Plaintiff]'s interest in the property" and Defendant agreed to pay "an amounts, with interest, which [Plaintiff] spends." Monahan Decl. ¶ 20; Brooks Aff. ¶ 8, Ex. 2, Consolidate Mortgage at ¶9. Plaintiff has "not explained what the 'recoverable costs' are, why it is entitled to reimbursement for these charges, or how the figure . . . was calculated." *Louis*, 2016 U.S. Dist. LEXIS 82026. Plaintiff refers the Court to Exhibit 4 to the Brooks Affidavit as backup for these costs, however, this exhibit is nothing more than over 75 pages of screenshots of the Corporate Advance History Screen, with no explanation provided. The Court is unable to decipher when these costs were incurred or what they were for.

With regard to the escrow advances, pursuant to the Consolidated Mortgage, Elliot is responsible for "Escrow Items," which include, among other things, taxes, assessments, water charges, and insurance premiums. *See* Monahan Decl. ¶21; Brooks Aff. ¶ 10, Ex. 2, Consolidated Mortgage ¶ 3. Plaintiff has provided little support for this claim. Although, Exhibit 5 of the Brooks Affidavit purports to provide support for this amount, taxes and insurance costs mentioned on this printout of 30 pages total only, $36,024.40, leaving $88,856.50 unsupported. *See Ditech Fin. LLC v. Singh*, No. 15-CV-7078 (FB) (SMG), 2017 U.S. Dist. LEXIS 145895 at *14 (E.D.N.Y. Sept. 6, 2017) (declining to award recovery for

escrow advances where Plaintiff failed to provide a "list of recoverable items and a record of how the total amount was calculated"); *Louis,* 2016 U.S. Dist. LEXIS 82026 at * 27 ("CIT provides little support for the $13,663.04 it seeks in escrow advances, stating only that it 'advanced $15,432.90 to cover the escrow payments on the Property, less the escrow/impound overdraft of $1,769.86 which sum totals $13,663.04.'"); *Hawkins*, 2015 U.S. Dist. LEXIS 131774 ("Although the Note provides for the payment of 'escrow shortages,' plaintiff has not adequately explained what these amounts are for").  Accordingly, the undersigned respectfully recommend that the request for $ $87,845.67 in recoverable costs and $88,856.50 of the escrow advances be denied, without prejudice to renewal if Plaintiff provides an adequate explanation of its request and that Plaintiff be awarded $36,024.40 in escrow advances.

       3.   *Late fees and other Fees*

Plaintiff seeks reimbursement of late charges in the amount of $13,667.08 and fees in the amount of $550.50.  Monahan Decl. ¶ 19.  The backup provided for Plaintiff's calculation of late fees seeks reimbursement of late fees from July 2009 through June 2018.  "However, even when the Note provides for late fees, New York courts have held that 'the collection of late fees after a mortgage note has been accelerated is impermissible.'" *Hawkins*, 2016 U.S. Dist. LEXIS 87698 (citing *4 B's Realty 1530 CR39, LLC v. Toscano,* 818 F. Supp. 2d 654, 662 (E.D.N.Y. 2011) (quoting *Carreras v. Weinrab*, 33 A.D.3d 953, 954, 826 N.Y.S. 2d 72, 74 (2d Dep't 2006)); *see also Eastern Sav. Bank v. Bowen*, No. 13-CV-3633 (ENV)(VMS), 2017 U.S. Dist. LEXIS 83135, 2017 WL 2375928 (E.D.N.Y. May 31, 2017) (no late fees may be awarded following the acceleration of the debt).

While there is no indication in the record that Plaintiff notified Defendant of its intention to accelerate the loan prior to the filing this action, at the very latest, late fees ceased to accrue on

July 28, 2015, the date this action was filed because under New York law, "[c]ommencement of a foreclosure action may be sufficient to put the borrower on notice that the option to accelerate the debt has been exercised." *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 983, 943 N.Y.S.2d 540 (2d Dep't 2012); *see also Albertina Realty Co. v. Rosbro Realty Corp.*, 258 N.Y. 472, 476, 180 N.E. 176 (1932*); Clayton Nat., Inc. v. Guldi*, 307 A.D.2d 982, 763 N.Y.S.2d 493 (2d Dep't 2003) ("The filing of the summons and complaint . . . . accelerated the note and mortgage[.]"); *accord E. Sav. Bank, FSB v. Whyte,* No. 13-CV-6111 CBA LB, 2014 U.S. Dist. LEXIS 196448, 2015 WL 790036, at *7 (E.D.N.Y. Feb. 24, 2015) (awarding late fees up to the date the action was commenced). Accordingly, Plaintiff's request for late fees must be reduced by all amounts accrued after that date, or $4,019.80.

Finally, Plaintiff requests $550.50 for "fees." No further explanation is provided. Without more the Court cannot find this is a recoverable fee with reasonable certainty and therefore, this request must be denied, without prejudice to renewal with sufficient evidentiary backup.

The undersigned respectfully recommends that judgment be entered in Plaintiff's favor in the amount of $9,647.28 in late fees, and, denied with leave to replead with respect to Plaintiff's request for $550.50 in fees.

4.     *Attorneys' Fees*

Plaintiff also seeks attorneys' fees in the amount of $38,530.00. Plaintiff's attorneys' fee request has three components: Plaintiff seeks to recover

- $1,700.00 for the flat fee initially charged for 21.5 hours of work;

- $34,630.00 for fees the firm charged for services billed at hourly rates;[3] and

---

[3] Presumably for 101.5 hours of work. The Monahan Declaration provides the number of hours covered by the flat fee arrangement and the total number of hours worked on the matter but does not expressly state the total number of

12

- $2,200 for anticipated fees

*See* Monahan Decl. ¶¶ 24-47.  The Consolidated Mortgage provides that in the event of default, the borrower shall be responsible for the noteholder's reasonable attorneys' fees.  *See* Compl. ¶ 31.  Nevertheless, "[t]he party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of hours spent and rates charged." *Onewest Bank, N.A. v. Cole*, No. 14-CV-03078 FB RER, 2015 U.S. Dist. LEXIS 93382 (E.D.N.Y. Apr. 17, 2015).  In addition, "'courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *Id.* (citing *Mack Fin. Servs. v. Poczatek*, No. 10–CV–3799 (JS)(AKT), 2011 U.S. Dist. LEXIS 117948, 202011 WL 4628695, at *10 (E.D.N.Y. Aug. 30, 2011)); *see also OneWest Bank, NA v. Raghunath*, No. 14-CV-3310 RJD MDG, 2015 U.S. Dist. LEXIS 131713, 2015 WL 5772272, at *6 (E.D.N.Y. Sept. 8, 2015) (recommending reduced award given the absence of time records).  This is so because "[e]ven where there is a flat rate agreement, the Court must still examine whether the fee is reasonable, and it does so by calculating the presumptively reasonable fee via the lodestar method and comparing it to the flat fee amount." *Id.*

Where a party is entitled to fees, the district court calculates the "presumptively reasonable fee" by the "lodestar" method, which entails determining the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar –

---

hours billed.  The Court reduced the number of hours worked by the number of hours covered by the flat fee arrangement to reach this number.

the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and citing *Perdue*, 559 U.S. 542).

Fee awards should "generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also Toussie v. County of Suffolk*, No. 01-CV-6716, 2012 U.S. Dist. LEXIS 127143, 2012 WL 3860760, at *5 (E.D.N.Y. Sept. 6, 2010) ("The party seeking attorney's fees 'bears the burden of establishing entitlement to an award,' and '[t]he applicant should exercise billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims") (quoting *Hensley*, 461 U.S. at 437).  "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S. Ct. 1933, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application'." *Kirsch*, 148 F.3d at 173 (quoting *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Eastern Sav. Bank v. Robinson*, No. 13-CV-7308 (ADS)(SIL), 2016 U.S. Dist. LEXIS 62005 (E.D.N.Y. May 9, 2016) ("In reducing an award due to excessive hours, a court is not required to set forth item-by-item findings concerning what may be countless objections to individual billing items.  Rather, it is within the court's discretion to reduce an award of attorneys' fees by a specific percentage for duplicative, vague, or excessive billing entries") (internal quotation omitted).

Courts in this District have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $300 to $450 for partners in law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates.  *See Castcapa Constr., LLC v. TMB Servs., L.L.C*, No. 17-CV-1023 (NGG) (SJB), 2018 U.S. Dist. LEXIS 14833, 2018 WL 623546 (E.D.N.Y. Jan. 30, 2018) (Junior associates are "typically compensated at between $100 to $200 per hour"); *Thomas v. City of New York*, No. 14 CV 7513, 2017 U.S. Dist. LEXIS 199235, 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017) ("An hourly rate of $450 remains within the range of rates found reasonable for partners with twenty or more years of experience in this District."); *Smart v. City of New York*, No. 15 CV 1405, 2017 U.S. Dist. LEXIS 24602, 2017 WL 933080, at *3 (E.D.N.Y. Feb. 17, 2017) ("In recent years, fees have been awarded in the Eastern District of New York at an hourly rate of $300 to $450 for partners and $100 to $325 for associates in civil rights cases."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 33221, 2017 WL 928472 (E.D.N.Y. Mar. 8, 2017).  With respect to work done by paralegals and other non-attorneys, courts in this district have awarded rates between $70 and $100 per hour.  *See Castcapa Constr*, 2018 U.S. Dist. LEXIS 14833; *Thomas*, 2017 U.S. Dist. LEXIS 199235 at *6; *Advantedge Corp. v. Krajicek*, No. 16 CV 1643 (WFK)(RML), 2017 U.S. Dist. LEXIS 218709 at * 10 (E.D.N.Y. Oct. 2, 2017).  Here, Plaintiff has requested reimbursement at rates ranging from to $520 to $165 per hour.  Recently, another court in this District awarded fees for attorneys from the same firm as Plaintiff's counsel here ranging from $220 per hour to $475 per hour.  *See CIT Bank, N.A. v. Ayers*, No. 15-cv-7256 (JFB)(SIL), 2017 U.S. Dist. LEXIS 201029 (E.D.N.Y. Dec. 5, 2017).  Plaintiff has provided background information on certain attorneys who performed services for the Plaintiff, however, has failed to provide background information for three attorneys for whom it seeks to recover attorneys' fees – Mencio, Krechmer and Ciolko.

15

Moreover, although Plaintiff submitted contemporaneous billing records along with the Monahan Declaration it is unclear which individuals billed hours that were attributable to the flat fee services and which individuals billed fees for services billed at hourly rates. Accordingly, with respect to Plaintiff's request for attorneys' fees incurred, the undersigned respectfully recommends that Plaintiff's motion for attorney's fees be denied without prejudice to renewal upon the submission of supporting documentation sufficiently describing the background of all attorneys and detailing and itemizing the fees sought.

In addition to the fees already incurred, Plaintiff seeks to recover $2,200.00 in legal fees it anticipates will be expended after the motion is decided. Monahan Decl. ¶ 40. "Courts in this District, however, typically do not award fees before they are incurred." *CIT Bank, N.A. v. Ayers*, No. 15-cv-7256 (JFB)(SIL), 2017 U.S. Dist. LEXIS 201029, 2017 WL 6816486 (E.D.N.Y. Dec. 5, 2017); *see also Gordon*, 2018 U.S. Dist. LEXIS 149777 ("plaintiff's request for anticipated fees be denied without prejudice and with leave to renew upon the submission of the appropriate supporting documentation after such fees are actually incurred"). Accordingly, the undersigned respectfully recommends that Plaintiff's request for anticipated fees be denied without prejudice and with leave to renew upon the submission of the appropriate supporting documentation after such fees are actually incurred.

    5.    *Costs*

Lastly, Plaintiff seeks costs in the amount of $3,572.83 comprised of $550.77 for filing fees; $1,870.00 for service of process; and $816.00 for title searches. "Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Raghunath*, 2015 WL 5772272, at *7. "Plaintiffs seeking to recover costs must submit bills or receipts for claimed expenses." *James v. AMTRAK*, No. 1:02-CV-03915-RJH, 2005 U.S. Dist.

LEXIS 5401, 2005 WL 6182322, at *20 (S.D.N.Y. Mar. 28, 2005).  "[C]ourt filing fees are recoverable litigation costs."  *1st Bridge LLC v. 682 Jam, Ave, LLC*, No. 08-CV-3401 (NGG)(MDG), 2010 U.S. Dist. LEXIS 118327, 2010 WL 4608326 at *6 (E.D.N.Y. July 13, 2010).  Plaintiff here has provided bills for the claimed service of process and title search expenses.  *See* Monahan Decl., Ex. E.  The docket reflects that Plaintiff paid $400.00 to file this lawsuit, which is adequate proof to recommend an award of same.  *See BH99 Realty, LLC,* 2011 WL 1841530, at *8.  Plaintiff also provides a bill for additional filing fees of $150.77.  Accordingly, the undersigned recommends that the request for $3,572.83 in costs be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for plaintiff shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
       February 5, 2019                                      _____/s/_____
                                                       ARLENE R. LINDSAY
                                                       United States Magistrate Judge